**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 27, 2013**

# In the Court of Appeals of Georgia

A13A1368. RIMMER et al. v. TINCH et al.

MILLER, Judge.

John and Mary Rimmer, adoptive father and biological mother of son M. H. R., born April 9, 2004, appeal from the trial court's grant of a petition to modify the visitation rights of Shane Tinch, the biological father of M. H. R., and the trial court's grant of a motion for contempt filed by Tinch and Patricia Frix, the paternal grandmother of M. H. R., alleging interference with their visitation rights. The termination of Shane Tinch's parental rights, M. H. R.'s adoption by John Rimmer, and Tinch and Frix's visitation rights were all accomplished by a consent order. On appeal, the Rimmers challenge the consent order as void. They also argue that the trial court erred in modifying Tinch's visitation and in awarding attorney fees. For the reasons that follow, we affirm in part, vacate in part, and remand with direction.

In an adoption case, the trial judge sits as both judge and jury and is vested with a broad range of legal discretion which will not be controlled by the appellate courts except in cases of plain abuse. *Sastre v. McDaniel*, 293 Ga. App. 671 (667 SE2d 896) (2008). In addition, "a trial court has broad discretion to determine if a party is in contempt of its order, and the exercise of that discretion will not be reversed on appeal unless grossly abused." (Citation and punctuation omitted.) *Hunter v. Hunter*, 289 Ga. 9, 11 (4) (709 SE2d 263) (2011).

The following is not disputed. On November 19, 2009, Tinch's petition to legitimate M. H. R. was dismissed. On December 7, 2009, the superior court entered its "Consent Order Entering Decree of Adoption" (hereafter "Consent Order").

In the Consent Order, the trial court made the following findings of fact and conclusions of law. Tinch was not married to Mary Rimmer when M. H. R. was born and did not file any action to legitimate him until one month after John Rimmer's petition to adopt was filed. Since his birth, M. H. R. has been in the legal custody of his mother and, since June 2005, John Rimmer has lived with the mother and child. John and Mary married in May 2006.

Since August, 2004, Tinch failed to provide for the care and support of the child for over a year and since April 2005, Tinch failed to communicate with or to

make a bona fide attempt to communicate with the child for over a year. Thus, the trial court found that sufficient evidence existed to terminate his parental rights pursuant to OCGA § 19-8-10 (b) (1) & (b) (2). Nonetheless, the Rimmers agreed that Tinch "shall have the right to begin supervised visits with [M. H. R.] on those occasions that this child is visiting with his paternal grandmother, Patricia Frix, who shall be responsible for supervising all visits" between Tinch and the child. Further, the Rimmers agreed that, if Tinch could prove that "he has established a familial bond" with the child, one year after entry of the adoption order he could file a petition seeking unsupervised visits to be set by the trial court or agreed by the parties.

The Consent Order further found that, since the child's birth, the paternal grandmother, Frix, had been allowed regular unsupervised visits with the child. The Rimmers agreed that Frix had established a bond with the child and that it was in the child's best interest to continue the visits with her. Additionally, John Rimmer agreed that Frix be allowed to intervene in the adoption proceeding in order to seek continuation of her visits with the child.

No appeal was taken from the Consent Order. More than one year after the Consent Order, Tinch filed his motion to modify visitation rights, seeking the right to have unsupervised visitation with the child, as provided in the Consent Order.

3

Having obtained new counsel, the Rimmers filed an objection to the motion, including a plea for a declaratory judgment finding the Consent Order void, as well as a motion for summary judgment asserting that allowing visitation with Tinch and Frix was illegal. In response, Tinch and Frix asserted that the Rimmers were estopped from challenging the Consent Order. Tinch and Frix also filed a motion for contempt against the Rimmers, based upon denial of their visitation rights beginning in September 2011.

The trial court denied the Rimmers' motion for summary judgment, concluding that, pursuant to OCGA § 19-7-3 (b), as amended in 1993, Ga. Laws 1993, p. 456, § 1,[1] Frix was entitled to seek visitation rights. No specific ruling was made on the Rimmers' claim that visitation with Tinch was illegal.

Following a hearing, the trial court entered its order on Tinch's motion to modify visitation and Tinch and Frix's motion for contempt, finding that Tinch would share visitation rights with Frix and those visitations would be unsupervised. Further, the trial court found the Rimmers in contempt of the Consent Order, ordered

---

[1] Providing that a grandparent shall have the right to seek visitation where "there has been an adoption in which the adopted child has been adopted by the child's blood relative *or by a stepparent*[.]" (Emphasis supplied.) See *Hudgins v. Harding*, 313 Ga. App. 613, 614-615 (722 SE2d 355) (2012).

corrective actions to make up for the lost visitation, and ordered the Rimmers to pay the attorney fees of Tinch and Frix.

1. In the Rimmers's first five enumerations of error, they allege illegalities in the underlying Consent Order. We consider these enumerations together and conclude that their challenges to the Consent Order were barred for the following reasons.

(a) First, as stated above, no appeal was taken from the Consent Order. Pursuant to OCGA § 19-8-18 (e), "[a] decree of adoption . . . shall not be subject to *any judicial challenge* filed more than six months after the date of entry of such decree." (Emphasis supplied.); See also *Oni v. Oni*, ___ Ga. App. ___, *3 (1) (Case No. A13A0368, decided July 15, 2013) (challenge to adoption order time barred when made 10 months after entry) (physical precedent only). Here, the adoption decree contained in the Consent Order was entered on December 7, 2009 and the Rimmers sought to challenge that order over a year later on December 14, 2010. Thus, to the extent that they challenged the adoption decree portion of the Consent Order, their challenge is barred.

(b) Second, counsel for the Rimmers prepared the Consent Order, and an order entered with the consent of counsel is binding on the client in the absence of fraud, accident, mistake, or collusion of counsel and, in the absence of such a showing, a

party cannot complain of a consent order. *Rieffel v. Rieffel*, 281 Ga. 891 (3) (644 SE2d 140) (2007). The Rimmers "cannot now complain of a result [they] aided in causing because induced error is not an appropriate basis for claiming prejudice." (Citations and punctuation omitted.) *Camp Cherokee, Inc. v. Marina Lane, LLC*, 316 Ga. App. 366, 371 (2) (729 SE2d 510) (2012).

(c) Finally, as asserted by Tinch and Frix below and here, the Rimmers's challenges to the Consent Order are also precluded by res judicata and judicial estoppel.

The doctrine of res judicata seeks to bring finality to litigation. By law, "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40; *Austin v. Cohen*, 268 Ga. App. 650, 654 (1) (602 SE2d 146) (2004).

In *Cain v. Hackley*, 124 Ga. App. 429 (184 SE2d 60)(1971), Hackley left her illegitimate child with the Cains in mid-June 1969, with a note indicating she was not abandoning the child, but had tried to find her a nice home. Upon Hackley's return from Florida in August, she filed a habeas corpus petition to obtain custody of her

6

child. After a hearing, the trial court denied her petition and awarded custody to the Cains. No appeal was taken from that order. Later, the Cains filed a petition to adopt the child, which the trial court denied and then granted custody to the mother. On appeal, this Court found that "[t]he award of custody to the Cains in the habeas corpus proceeding is res judicata until and unless it has been set aside by proper proceedings on appeal, or until it be found by a court having jurisdiction of the matter that there has been a change of conditions which requires or justifies a change in the child's custody." *Hackley*, supra 124 Ga. App. at 430 (3).

*Bates v. Bates*, 317 Ga. App. 339 (730 SE2d 482) (2012) involved an adoption petition filed by Tina Bates to adopt the child of her then-partner, Nicole Bates. Nicole consented to the adoption and it was granted. Following their breakup, Nicole filed a motion to set aside the adoption, arguing that it was void. The trial court denied the motion as untimely under OCGA § 19-8-18 (e). In the meantime, Tina had filed a petition seeking custody of the child, which the trial court denied based on Nicole's argument that the adoption decree was void because Georgia does not recognize "second parent" adoptions. In reversing this finding, this Court concluded that, as between Nicole and Tina, the adoption decree was binding. *Bates*, supra, 317 Ga. App. 341-344.

Moreover, this Court also noted the efficacy of the doctrine of judicial estoppel to this situation, stating that the doctrine

> is intended to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment, and it forbids [parties], who ha[ve] successfully maintained a certain position in a legal proceeding to assume a contrary position simply because [their] interests have changed especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by [them].

(Punctuation and citations omitted.) *Bates*, supra, 317 Ga. App. 344, n. 5.

Here, the Rimmers, knowing that the parental rights of Tinch were terminated in the Consent Order, nonetheless agreed to let him have visitation with their son supervised by Frix for a year and then to have the opportunity to seek unsupervised visitation. They cannot now complain that he did so.

Therefore, we find the Rimmers's attacks on the Consent Order to be barred.

2. In their sixth enumeration, the Rimmers contend that the trial court erred when it modified Frix's visitation with the child without first considering the best interest of the child. This claim lacks merit.

The order on Tinch's motion to modify and Tinch and Frix's motion for contempt, however, does not make a permanent upward adjustment of Frix's

8

visitation. Instead, it orders that the Rimmers "shall purge themselves [of contempt] by extending extra visitation to . . . Tinch and . . . Frix" by allowing visitation one extra weekend a month for 12 months, along with half of the fall break vacation and extra days during Christmas vacation, to make up the 46 days of visitation denied by the Rimmers.

Further, no argument was made below that the trial court failed to consider the best interest of the child in issuing this order, nor did the Rimmers present any evidence at the hearing on this issue. "It is well settled that issues presented for the first time on appeal furnish nothing for use to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken." (Punctuation and footnote omitted.) *Pinnacle Properties. V, LLC v. Mainline Supply of Atlanta, LLC*, 319 Ga. App. 94, 100 (2) (735 SE2d 166) (2012).

3. Although the Rimmers' seventh enumeration is that the trial court erred in considering hearsay when granting unsupervised visitation to Tinch, the argument in the brief deals with the legality of attorney fees in a contempt proceeding. Therefore, this enumeration is deemed abandoned. Ct. App. Rule 25 (c) (2).

4. In enumerations eight and nine, the Rimmers contend that the trial court erred when it granted an award of attorney fees because the visitation portions of the Consent Order were void and the trial court did not conduct a proper evidentiary hearing. They are considered together.

(a) The enforceability of the Consent Order between the Rimmers and Tinch and Frix has been addressed in Division 1.

(b) The motion for contempt asked for attorney fees, citing OCGA §§ 19-6-2 (a) (1) & 9-11-54 (d). The order awarding $957 in attorney fees and filing costs,[2] however, is silent as to the basis upon which the award was made.

Further, the evidence was insufficient to support an attorney fee award under any statute. It is well settled that "[a]n award of attorney fees is unauthorized if [a party] failed to prove the actual costs of the attorney and the reasonableness of those costs." (Punctuation and footnote omitted.) *Gray v. King*, 270 Ga. App. 855, 858 (2) (b) (608 SE2d 320) (2004). Here, counsel merely stated what he charged Tinch and Frix, but did not indicate the total number of hours spent on the case or that the fees incurred were reasonable.

---

[2] Tinch and Frix acknowledge in their brief that they were not entitled to recover filing fees of $207 because none were paid.

10

Therefore, "the award of attorney fees must be vacated and the case remanded for reconsideration of [the issue below]." (Citation omitted.) *Webb v. Watkins*, 283 Ga. App. 385, 386 (2) (641 SE2d 611) (2007). On remand, it will be Tinch and Frix's burden to show their attorney fees and the reasonableness thereof by introducing evidence of hours, rates, or some other indication of the value of the professional fees actually incurred. Id.

*Judgment affirmed in part, vacated in part and case remanded with direction. Barnes, P. J., concurs.  Ray, J. concurs in the judgment only.*

11