**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 20, 2017**

# In the Court of Appeals of Georgia

A17A1097. SIMMONS v. WILSON.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, William Calvin Simmons, pro se, appeals from the order of the trial court modifying custody by granting sole legal and physical custody of their four children to his ex-wife, Crecia Kimberly Wilson. Simmons contends multiple errors on appeal, and, upon our review, we affirm the trial court's order.

We first note "that the Solomonic task of making custody decisions lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." (Citations and punctuation omitted.) *Smith v. Pearce*, 334 Ga. App. 84, 92 (3) (778 SE2d 248) (2015). And, above all, "[a] trial court faced with a petition for

modification of child custody is charged with exercising its discretion to determine what is in the child's best interest."(Citations and punctuation omitted) *Carr-MacArthur v. Carr*, 296 Ga. 30, 31 (1) (764 SE2d 840) (2014). See OCGA § 19-9-3 (a) (2) (the best interest of the child is controlling as to custody changes).

> Where … the trial court has exercised its discretion and awarded custody of children to one fit parent over the other fit parent, this Court will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. Where there is any evidence to support the decision of the trial court, this Court cannot say there was an abuse of discretion.

(Citation and punctuation omitted) *Roberts v. Kinsey*, 308 Ga. App. 675, 678 (6) (708 SE2d 600) (2011).

Here, at the time of their 2010 divorce, Simmons and Wilson were awarded joint legal custody, and Wilson was given primary physical custody.[1] Simmons had weekly visitation, shared visitation during holiday and school breaks, and two weeks of visitation during the summer. In June 2011, Wilson sought and was granted a six month family violence protection order because of Simmons' alleged

---

[1] The divorce was in part due to Simmons "admitted methamphetamine abuse for several years."

2

methamphetamine use and violent behavior, which following a hearing, was extended to three years by order of the trial court on December of 2011. The order suspended Simmons' visitation, but allowed regular telephone, email or text message contact. Simmons was also ordered to undergo a certified family violence intervention program and submit to a psychological evaluation and any recommended treatment.

The protective order was set to expire on December 16, 2014, and following a hearing on December 8, 2014, the trial court ordered that the protective order remain in effect for another "30 days from December 8, 2014." On January 16, 2015, Wilson filed the subject petition to modify visitation, in which she alleged, among other things, that Simmons had failed to obtain a mental health evaluation, drug testing or counseling, presented a "continuing danger to his children," and continued to engage in activities that made him unfit for any visitation with his children. She requested that the visitation provisions of the final divorce decree be modified in the best interests of the children, and any other relief the trial court deemed appropriate.

A temporary hearing was held on January 23, 2015, at which Simmons' former girlfriend testified about Simmons' behavior, including his stalking at the end of the their relationship, drug use, and other bizarre behavior. At the conclusion of the hearing, the trial court ordered Simmons to submit to an "extended panel hair follicle

test in the next five days with the results directed to me," and if the drug test was negative, Simmons would be permitted to have supervised visitation with his children. Simmons, who was represented by counsel at the hearing, agreed.

A final hearing was then held on June 4, 2015, at which Simmons appeared pro se. When Simmons complained that he had not been allowed visitation, the trial court indicated that, per the January order, visitation was conditioned upon a negative drug test, and Simmons' drug test was positive. The drug test results were faxed directly to the trial court, as agreed to at the temporary hearing. After Simmons complained that he did not receive a copy of the test results, the trial court directed that he be given a copy.

Wilson testified at the hearing about Simmons' erratic behavior since their 2010 divorce that she believed was a result of his continued drug use, his inappropriate disciplining and threatening of the children via text message, and his use social media to engage in conflict with her. During his testimony, Simmons disputed the positive test results, methamphetamine use, and other behavior. When Simmons objected to the admission of the positive test result, and argued that it was hearsay, the trial court suspended the hearing, and issued an order directing Simmons to get another drug test, after which he could subpoena the person who performed the

4

test to testify as to the results. A final hearing was held on July 20, 2015, but a transcript was not included with the record on appeal.[2]

On August 12, 2015, the trial court entered a final order modifying custody. The trial court awarded sole legal and physical custody to Wilson and granting Simmons no visitation, but permitting him to send letters, emails, texts, gifts or cards to the children. The trial court found, among other things, that Simmons tested positive for methamphetamine, failed to get the mental health and family violence counseling as directed by the family violence protective order, displayed a pattern of obsessive and strange behavior, had no meaningful bond with the children, and was inappropriate in his communication with and disciplining of the children. Simmons filed a motion for new trial, which following a hearing, the trial court denied, and this appeal ensued.

1. Simmons first contends that in making its final decision on the petition to modify custody, the trial court improperly relied on evidence from the temporary hearing, including testimony from his ex-girlfriend, information about his non-

---

[2] In the final order, the trial court noted that at the July 2015 final hearing, Simmons failed to produce results of another drug test or call a witness to dispute the initial positive test result. He also continued to deny that he had a drug or mental health problem.

5

compliance with the family violence order, and text messages between Simmons and his children. Simmons maintains that the evidence could not be relied on without the trial court's express notice of intent to do so, and no notice was given in this case.

> The nature and quality of the evidence presented at a temporary hearing is likely to be different than that which is ultimately presented at the final hearing. Parties should ordinarily expect that only that evidence which their opponent sees fit to offer at the final, more formal hearing will be relied on to support the permanent custody award. Thus, absent express notice to the parties, it is error for a trial court to rely on evidence from the temporary hearing in making its final custody determination. But we will not assume that the judge considered anything outside of the evidence in rendering his judgment.

(Citations and punctuation omitted.) *Marks v. Soles*, 339 Ga. App. 380, 384 (1) (793 SE2d 587) (2016).

In its order denying Simmons motion for new trial, the trial court stated that it routinely uses "sworn, cross-examined testimony given at the temporary hearing in all domestics matters," because to do otherwise would be redundant, as it would require witnesses to appear at another hearing to rehash the same testimony to the same fact finder. The trial court acknowledged that on this occasion, at the outset of the temporary hearing, it had failed to announce, as it ordinarily would, its intention

to consider the temporary hearing evidence in its disposition of the case. However, the trial court found that the omission was harmless because the complained-about evidence was a very small part of the evidence considered, "not determinative," and the referenced testimony was "sworn live witness testimony subject to cross-examination."[3]

We first note that the January 23, 2015 temporary hearing and the June 4, 2015 hearing were transcribed. Although the June 4 hearing was designated as a final hearing, it was recessed until a later date. A subsequent hearing held July 20, 2015, was not transcribed . While the final order includes some facts which appear to have been presented at the temporary hearing, specifically testimony from Simmons' ex-girlfriend, in the order denying the motion for new trial, the trial court stated that the evidence from the temporary hearing was a small portion of the evidence considered and "not determinative." Without a transcript of the final hearing, we have insufficient information regarding the entirety of the evidence presented, and "[w]hen a transcript of the evidence is necessary and the appellant omits it from the record or fails to submit a statutorily authorized substitute, we must assume that the evidence

---

[3] Simmons was represented by counsel at the temporary hearing. However, at the subsequent hearings, he appeared pro se.

supported the contested determination." (Footnote omitted.) *Kennedy v. Kennedy*, 309 Ga. App. 590, 592 (1) (a) (711 SE2d 103) (2011). See *Williams v. Williams*, 301 Ga. 218, 222 (2) (800 SE2d 282) (2017) (record reveals that trial court relied on evidence from final hearing, even though evidence also "likely" presented at the temporary hearing). Compare *Pace v. Pace*, 287 Ga. 899, 900 (700 SE2d 571) (2010) (apparent from final divorce decree and subsequent order denying Wife's motion for new trial that court relied substantially on its memory of unrecorded testimony from temporary hearing in determining custody).

2. Simmons also contends that the trial court erred by appointing a guardian ad litem ("GAL"), and then failing to notify the GAL of the appointment. Simmons asserts that because of the error, he was denied the opportunity to cross-examine the GAL and establish certain significant facts. The record reveals that the trial court appointed a GAL, but she apparently was not notified of the appointment, thus, she never instituted any type of investigation related to the case, or appeared at any of the hearings. Our review of the record reflects that, despite the opportunity to do so at three hearings, Simmons did not question or object to the GAL's absence until his motion for new trial. A party "may not idly sit by and watch when possible error is presented and on appeal claim error. It is necessary, in order to make the same a basis

for appellate review that opposing counsel make proper objection or invoke some ruling of the court." *Dept. of Transp. v. Brannan*, 278 Ga. App. 717, 720 (629 SE2d 481) (2006).

Accordingly, this enumeration is waived.

3. Simmons next contends that the trial court erred in admitting results from a hair follicle drug test that Simmons agreed to submit to at the temporary hearing. He appears to argue that the document was hearsay and should not have been admitted because it was sent directly to the trial court, rather than introduced through the testimony by the person who conducted the test.

The record reveals, however, that when the positive test result was introduced at the June 4 hearing, Simmons, appearing pro se, objected, and the trial court suspended the hearing, ordered Simmons to have another drug test with "the person of your choice . . . [and] submit those results to this Court." The trial court stated that it would also order that the name of the person who conducted the test be included, and that the person could be subpoenaed to testify at the next hearing. As previously noted, the subsequent hearing was not included with the record on appeal, and, thus, this Court cannot speculate regarding what may or may not have happened at the subsequent hearing. As noted earlier, in these circumstances, "we must assume that

the evidence supported the contested determination." *Kennedy v. Kennedy*, 309 Ga. App. at 592 (1) (a).

4. Simmons last contends that the trial court's modification order awarding sole legal and physical custody to Wilson and no visitation to Simmons was contrary to the evidence. He asserts that there was no evidence amounting to a substantial change of circumstances to justify changing custody. We do not agree.

> A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child. (Citations and punctuation omitted.) *Lynch v. Horton*, 302 Ga. App. 597, 600 (4) (692 SE2d 34) (2010); see *Daniel v. Daniel*, 250 Ga. App. 482, 483-484 (2) (552 SE2d 479) (2001) (once a divorce decree has been approved and a permanent child custody award has been entered, the test for use by the trial court in change of custody suits is whether there has been a change of condition affecting the welfare of the child). The trial court may consider a variety of relevant factors in determining the best interest of the child. See OCGA § 19-9-3 (a) (3).

*Warren v. Smith*, 336 Ga. App. 342, 343 (785 SE2d 25) (2016). See OCGA § 19-9-3 (a) (2) ("The duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best

10

promote the child's welfare and happiness and to make his or her award accordingly.") Factors the trial court may consider in determining the best interests of the child, include, but not are not limited to, the bond and emotional ties existing between the parent and children, the mental health of the parent, evidence of family violence, and evidence of parental substance abuse. See OCGA § 19-9-3 (a) (3) (A)-(Q). Regarding the restriction of visitation rights,

> [i]t is the express policy of this state to encourage that a child has continuing contact with parents and grandparents who have shown the ability to act in the best interest of the child and to encourage parents to share in the rights and responsibilities of raising their child after such parents have separated or dissolved their marriage or relationship.

OCGA § 19-9-3 (d). However,

> [w]here parents contest the issue of custody of a child, which includes visitation, the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, this court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion.

(Citations and punctuation omitted.) *Taylor v. Taylor*, 282 Ga. 113, 114 (1) (646 SE2d 238) (2007) ("Since the trial court's findings regarding Husband's fitness as a

11

parent are supported by some evidence and amount to . . . 'exceptional circumstances' . . . the denial of visitation to Husband was not an abuse of discretion."); *Woodruff v. Woodruff,* 272 Ga. 485, 486 (1) (531 SE2d 714) (2000) ("In awarding visitation rights, a trial court is authorized to impose such restrictions as the circumstances warrant.")

Here, the trial court considered evidence of Simmons' behavior that occurred after the original custody determination, including his continued abuse of methamphetamine, failure to comply with the directives of the family violence protective order, pattern of obsessive and strange behavior, failure to meaningfully bond with the children, and inappropriate communications and disciplining of the children.

Since the trial court's findings regarding Simmons' fitness as a parent are supported by some evidence, we conclude the change of custody, and denial of visitation to Simmons was not an abuse of discretion. See *Taylor*, 282 Ga. at 114 (1).

*Judgment affirmed. McMillian and Mercier, JJ., concur.*